TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00865-CR






Jonathon Irving Hitt, a/k/a Father Jeremiah, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BLANCO COUNTY, 33RD JUDICIAL DISTRICT


NO. 691, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING







 A jury found appellant Jonathon Irving Hitt, also known as Father Jeremiah, guilty
of five counts of indecency with a child by sexual contact and three counts of indecency with a
child by exposure. See Tex. Penal Code Ann. § 21.11 (West Supp. 2001). (1) The jury assessed ten
years' imprisonment for each count of indecency by contact and three years' imprisonment for each
count of indecency by exposure. The sentences were made to run concurrently.


Points of Error


 Appellant advances four points of error. First, appellant complains that the trial
court erred when it admitted into evidence "extraneous bad acts." Second, appellant urges that the
trial court erred in permitting Susan Packwood, a social worker-psychotherapist, to testify that the
complainant-child "was telling the truth." Third, appellant contends that the trial court erred
when it excluded from evidence the psychiatric report on the child by Dr. Elizabeth Dybel. Fourth,
appellant challenges the factual sufficiency of the evidence to sustain the convictions. We will
affirm the conviction.


Background


 S.S. was born on September 22, 1985. (2) He was brought to the Christ of the Hills
Monastery in Blanco County by his mother, Abba St. Germaine, when he was eight and a half or
nine years old. She felt his schooling there and the surroundings might be the answer to the
difficulties S.S. had experienced in the first and second grades of school in Houston and in a
fatherless home.

 St. Germaine first visited the monastery when she was three months pregnant with
S.S. at the suggestions of friends. Thereafter, she often visited the monastery and became acquainted
with the members of the institution, which was associated with the Russian Orthodox Church. 
St. Germaine related that she was married at the monastery (3) and that S.S. was baptized there. A
monk at the monastery, Father Benedict (Sam Green), was godfather to S. S.

 St. Germaine knew there was no formal school at the monastery at the time she left
S.S. there. There were plans for starting a school, however, and it was understood that S.S. would
receive instructions from the monks until then. At first, St. Germaine was pleased with S.S.'s
progress and emotional growth, but she later became concerned about S.S.'s schooling.

 After about a year and a half, S.S. was expelled or asked to leave the monastery
because the residents there were frustrated and angry about S.S.'s conduct. Appellant later flew to
Houston to consult with St. Germaine. It was decided that S.S. should return to the monastery. 
Sometime after his return, S.S. was permitted to become a novice. St. Germaine became irritated
because the monastery did not consult her before permitting S. S. to become a novice and because
the monastery did not cooperate with an Austin company she retained to assist the monastery with
S.S.'s education. On St. Germaine's visits to the monastery, S.S. denied any physical or sexual
abuse and she observed no change in his personality or behavior.

 Subsequently, there was a group meeting at the monastery to confront S.S. about his
veracity, his lack of responsibility in avoiding his fair share of work assignments, and his attempts
to get other children at the monastery in trouble with the monks. After the group's grievances were
discussed, another meeting was scheduled to focus on a remedy. St. Germaine withdrew S.S. from
the monastery in November 1997 prior to the second meeting.

 After S.S.'s return to Houston, individuals at the monastery called to inquire about
his welfare. S.S. refused to talk to them. St. Germaine also received a telephone call from Michael
Woodson, a San Antonio attorney, inquiring why S.S. had been removed from the monastery and
imparting certain information to her. Some months after S.S. left the monastery, he had difficulties
with a coach at his public school. St. Germaine asked S.S. why he seemed to have trouble with male
authority figures. S.S. blurted out that appellant had raped him twice while he was at the monastery. 
S.S. subsequently gave a statement to the Blanco County district attorney that he had been raped nine
times by appellant.

 S.S. was fourteen years old at the time of the October 1999 trial. He testified that in
the summer of 1997, before his twelfth birthday, appellant began inviting him to spend Saturday
nights at the Elder House on the grounds of the monastery. Father Benedict and his elderly mother
lived there with appellant. The house was air conditioned, unlike S.S.'s regular sleeping quarters. 
S.S. slept in a room with appellant which contained twin beds. The second night S.S. was there,
appellant climbed into his bed and slept with him. On another night, while in bed with S.S.,
appellant began hugging S.S. and kissing him on the cheek and neck. S.S. felt awkward,
confused, and embarrassed, but did not say anything to appellant. 

 On a night in June 1997, appellant took off all his clothes and crawled into bed
with S.S. During that night, appellant hugged and kissed S.S., who was scared and felt that "it was
really wrong." The next day, Father Benedict sent for S.S. and told him that appellant had revealed
the incident. Father Benedict instructed S. S. that the conduct was "perfectly okay" and S.S. was not
to tell anyone, especially his mother.

 S.S. testified that on another night appellant, completely naked, got in bed with him
and tried to take S.S.'s clothes off, but did not succeed. S.S. related that appellant had an erection
and he could feel appellant's genitals on his body. S.S. was instructed to get on top of appellant and
he believed appellant was moving underneath him while with an erection. Three or four weeks
later, appellant had S.S. take his clothes off, and while they were both naked, told S.S. to get on top
of him in S.S.'s bed. S.S. could feel appellant's genitals on his body. Appellant ejaculated during
this incident.

 S.S. testified that a number of these incidents occurred in June, July, and August
1997, but he could not keep up with all the dates. He testified that the last time he and appellant
were together nude in his bed, appellant had him touch appellant's genitals, and that appellant
ejaculated. Despite Father Benedict's advice, S.S. felt repulsed, ashamed, and that it was wrong. 
S.S. did not make an earlier outcry because he was scared.

 Michelle Howard, a housekeeper at the Elder House, testified that when she
cleaned house on Sunday mornings, she frequently found only one bed had been used in the bedroom
where appellant and S.S. had spent the night. Richard Martinez and Charles Belcher, a printer and
a professor employed at the monastery, said they saw appellant and S.S. on a bed together in a
small room off the monastery's kitchen on different occasions prior to the times alleged in the
indictment. They were fully clothed on each occasion. Susan Packwood, a social worker and
psychotherapist, treated S.S. for nine months after his delayed outcry to his mother. She testified that
S.S. exhibited the behavior characteristic of a child who had been sexually abused.

 The defense witnesses included Dr. Robert Leo Jimenez, a psychiatrist from San
Antonio. Appellant had gone to Dr. Jimenez and asked for an evaluation. Dr. Jimenez testified that
he listened to appellant's account of events and told appellant that he would have to be tested to see
if appellant was being truthful. Appellant was given a battery of psychological tests by Dr. Gary
Bernard, whose report was studied by Dr. Jimenez. In analyzing the test results, Dr. Jimenez
concluded that appellant was "telling the truth"; that there was "not a shred of evidence" that
appellant fit the profile of a pedophile; and that appellant had come from a very good family and not
the type of "family background that I have just described."

 The art teacher at the monastery and three former students testified that S.S.'s
reputation for truthfulness was "bad." Some of these witnesses were allowed to describe incidents
or difficulties S.S. had created.

 At the monastery, Alma O'Hair, a one-time close friend of S.S.'s mother, related that
she introduced St. Germaine to the monks at the monastery. She testified that while S.S. was at
the monastery, St. Germaine revealed to her that she had strong romantic feelings for appellant. 
St. Germaine had earlier denied having such feelings.

 Appellant testified to his background, his seminary training, and his becoming Father
Jeremiah. He was opposed to accepting S.S. at the monastery at the time when no school existed. 
He described his efforts to assist S.S., S.S.'s expulsion from the monastery, his own trip to
Houston to discuss S.S.'s future, and the decision to allow S.S. to return to the monastery. 
Appellant stated that S.S.'s mother had expressed her strong romantic feelings for him and that
he rebuffed her because of his vows of celibacy.

 Appellant denied ever having been in bed with S.S., and specifically denied the
allegations in the indictment and any other acts of sexual abuse. He related that as a result of the
criminal charges, he was now a suspended monk "in limbo" and that the Russian Orthodox
Church had withdrawn authorization for the monastery. Appellant mentioned the civil lawsuit
against the monastery brought by S.S. and his mother subsequent to the criminal charges being filed.

 In rebuttal, the State called Dr. David Poole, a psychologist from Austin. Dr.
Poole testified that he had examined the psychological report on appellant prepared by Dr. Bernard
for Dr. Jimenez. He said,


 All you have reflected in the test results is that apparently if sex abuse did occur
that it wasn't as a result of a mental illness, it wasn't a result of a personality disorder
and that there appears to be no significant abiding guilt or anxiety associated with
the act if it occurred. 



Dr. Poole added that no one can tell from psychological testing whether certain acts such as sexual
abuse occurred.


Extraneous Matters


 In his first point of error, appellant contends that "the trial court erred when it
admitted appellant's extraneous bad acts." The complaint involves the testimony of State's
witnesses Martinez and Belcher. Martinez stated that he worked in the print shop at the
monastery from approximately 1994 to 1996. On one occasion, he entered the kitchen and as he
did he looked into a small room with a bed next to the kitchen. Martinez saw appellant and S.S.
on the bed together, fully clothed. Martinez reported that when appellant saw Martinez,
appellant appeared shocked and startled. S.S. was facing the wall, and Martinez did not see his
face.  Martinez immediately returned to the print shop and did not pursue the matter at the time.

 Belcher, a college professor, related that he was employed at the monastery from June
to November 1995. One afternoon, Belcher went to the kitchen to fix himself a sandwich. As he
prepared his sandwich, Belcher saw appellant and S.S. lying on the bed in the adjoining darkened
sleeping area. Appellant was on his back and S.S. was on top of him. Appellant appeared "real
surprised" when he saw Belcher. Appellant jumped up and said, "I was just, I was just." Belcher
left immediately and returned to his work station. He did not report the matter to anyone at the
time.

 Appellant objected to Martinez's and Belcher's testimony on the basis of Rule
404(b).  Tex. R. Evid. 404(b). (4) The objection was overruled. The trial court ruled that the evidence
was admissible under the terms of article 38.37. Tex. Code Crim. Proc. Ann. art. 38.37 (West
Supp. 2001). (5)

 An evidentiary statute trumps a rule of evidence adopted by the courts. The
Texas Constitution specifically authorizes the legislature to write rules of evidence. Tex. Const.
art V, § 31. While certain legislative functions vested in the legislature may not be delegated,
article V, section 31(c) permits the legislature to partially delegate its evidentiary rule-making
authority to the judiciary. Id. art V, § 31(c); Jackson v. State, 861 S.W.2d 259, 261 (Tex.
App.--Dallas 1993, no pet.). The legislature has partially delegated its authority in this field to the
Court of Criminal Appeals. See Tex. Gov't Code Ann. § 22.109 (West 1988); see also id. § 22.108
(West Supp. 2001) (concerning the rules of appellate procedure). Article V, section 31 of the state
constitution and section 22.109 of the government code expressly reserve to the legislature the
right to disapprove of the rules of evidence promulgated by the Court of Criminal Appeals. 
Jackson, 861 S.W.2d at 261.

 Article 38.37 is an evidentiary rule, enacted by the legislature, limited to certain
designated offenses. Act of May 29, 1995, 74th Leg., R.S., ch. 318, §48, 1995 Tex. Gen. Laws
2734, 2748-49. The enactment is entirely consistent with the concept of limited delegation
articulated in the state constitution and the government code. Jackson, 861 S.W.2d at 261. By
its express terms, article 38.37, section 2 creates an exception to Texas Rules of Evidence 404
and 405. Article 38.37, section 2 supersedes in certain sexual abuse cases the application of
Texas Rules of Evidence 402 and 404. (6) See Conrad v. State, 10 S.W.3d 43, 46 (Tex. App.
--Texarkana 1999, no pet.) (citing Howland v. State, 966 S.W.2d 98, 103 (Tex. App.--Houston
[1st Dist.] 1998), aff'd on other grounds, 990 S.W.2d 274 (Tex. Crim. App. 1999)).


Contrary to appellant's suggestion, article 38.37 does supersede application of rule
402. By enacting article 38.37, the legislature in effect determined that, in certain
sexual abuse cases, evidence of "other crimes, wrongs, or acts" committed by
the accused against the child victim are relevant and admissible under rule 402. 
See Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (Vernon Pamph. 1998) (noting that
evidence shall be admitted for its bearing on relevant matters including state of
mind and parties' previous and subsequent relationship).



Hinds v. State, 970 S.W.2d 33, 35 (Tex. App.--Dallas 1998, no pet.).

 The trial court did not err by overruling appellant's Rule 404(b) objection and
admitting the testimony of Martinez and Belcher under article 38.37.


Notice


 Appellant further contends that Martinez's and Belcher's testimony should have
been excluded under article 38.37 because he was not given timely notice that the State intended to
use the testimony in its case-in-chief. See Tex. Code Crim. Proc. Ann. art. 38.37, § 3. Appellant
concedes that he did not make a timely request for such evidence under section 3 of article 38.37,
but relies upon his timely request for evidence of extraneous matters expressly made under Rule
404(b). (7)

 In McCoy v. State, 10 S.W.3d 50 (Tex. App.--Amarillo 1999, no pet.), the court
stated:


The statute [article 38.37] does provide that upon "timely request", the State must
give notice of its intent to introduce such evidence. In this case, no such request for
notice was made, and no notice given by the State specified that it was given to
comply with article 38.37. However, the State did give notice of its intent to use
evidence of other acts in response to a Rule 404(b) request.



Id. at 53 (emphasis added).

 McCoy is similar to the instant case as the State gave notice of its intention to use
other acts in response to appellant's request under Rule 404(b), but did not include the testimony
in question as no request was made under article 38.37, section 3. In McCoy, the State raised
article 38.37 for the first time on appeal to justify the admission of the evidence at issue. Id. 
Without addressing the notice question more specifically, the McCoy court stated:


The fact that the benefit of the statute was not specifically invoked by the State
at trial does not prevent it from being applicable in our consideration of the
challenge before us. The statute's provisions authorizing the admission of the
evidence in question is dispositive of appellant's Rule 402, 404(b) and 405
challenges. 



Id. at 54.

 Article 38.37 put appellant's counsel on notice of the evidentiary procedure
required "[n]otwithstanding Rule 404." Appellant argues that article 38.37, section 3 refers to
Rule 404(b). Indeed it does, but the reference is to the nature of the State's response to a timely
request made under article 38.37. The reference is not to the required request. No timely request
for notice under article 38.37 having been made, the evidence was admissible.


Rule 403


 Appellant further contends that the extraneous act evidence should not have
been admitted because the trial court refused to conduct a balancing test under Rule 403 before
the evidence was introduced. See Tex. R. Evid. 403. (8)

 When evidence of a defendant's extraneous acts is relevant under article 38.37, the
trial court is still required to conduct a Rule 403 balancing test upon a proper objection or request. 
Walker v. State, 4 S.W.3d 98, 103 (Tex. App.--Waco 1999, pet. ref'd); Poole v. State, 974 S.W.2d
892, 897 (Tex. App.--Austin 1998, pet. ref'd); Ernst v. State, 971 S.W.2d 698, 700-01 (Tex.
App.--Austin 1998, no pet.); see also Stahle v. State, 970 S.W.2d 682, 689 (Tex. App.--Dallas
1998, pet. ref'd); Hinds, 970 S.W.2d at 35. However, in Jenkins v. State, 993 S.W.2d 133, 137
(Tex. App.--Tyler 1999, pet. ref'd), both parties agreed that the legislature in enacting article
38.37 had already conducted the balancing test required by Rule 403 and determined that
evidence admissible under article 38.37 does not offend Rule 403.

 Rule 403 does not require that the balancing test be performed on the record. 
Yates v. State, 941 S.W.2d 357, 367 (Tex. App.--Waco 1997, pet. ref'd). In overruling a Rule
403 objection, the trial court is assumed to have applied a Rule 403 balancing test and
determined the evidence was admissible. Id.; Poole, 974 S.W.2d at 897. In the instant case, there
were two hearings in the absence of the jury where notice under article 38.37 and the application
of Rule 403 to Belcher's and Martinez's testimony were jointly discussed. Relevance, probative
value, and prejudice were part and parcel of this colloquy. The evidence was admitted as relevant
and admissible under article 38.37, the trial court finding the evidence probative as showing the
previous relationship between the parties and bearing on their states of mind. The trial court
expressly concluded there was no unfair prejudice. It certainly appears that a Rule 403 balancing
test was performed on the record. The trial court, however, stated that it did not believe Rule 403
applied because the evidence did not involve "bad acts," (9) and it would not apply the rule. From
this stems appellant's claim that the trial court refused to perform the balancing test. Since the
balancing test had in effect already been performed, the trial court's statement of "no application"
is rather meaningless. If a trial court's action is correct, although incorrect or insufficient reasons
are given, no reversal will follow, especially with regard to the admission of evidence. McDuff v.
State, 939 S.W.2d 607, 619 (Tex. Crim. App. 1997); Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990).

 Under the circumstances presented, any error in the trial court's conclusion about
the application of Rule 403 does not entitle appellant to the relief requested. There was no
abuse of discretion in admitting the evidence. Point of error one is overruled.


Packwood's Testimony


 In point of error two, appellant claims that the "trial court erred when it let
Susan Packwood testify that the [complainant] was telling the truth."

 Expert testimony that a child exhibits behavioral characteristics that have been
empirically shown to be common among children who have been sexually abused is relevant and
admissible as substantive evidence under Texas Rule of Evidence 702. Vasquez v. State, 975
S.W.2d 415, 417 (Tex. App.--Austin 1998, pet. ref'd) (citing Yount v. State, 872 S.W.2d 706, 709
(Tex. Crim. App. 1993); Cohn v. State, 849 S.W.2d 817, 819-21 (Tex. Crim. App. 1993)). An
expert witness may not however, testify directly that a particular witness is truthful, or that a
class of persons to which the particular witness belongs is truthful. Yount, 879 S.W.2d at
711; Vasquez, 975 S.W.2d at 417; see also Gonzales v. State, 4 S.W.3d 406, 417. (Tex.
App.--Waco 1999, no pet.).

 Appellant does not challenge Packwood's qualifications as an expert but claims
that the State crossed the line by eliciting, over objection, testimony that S.S. told Packwood the
truth about the sexual abuse. Packwood testified that she has a master's degree in social work, is
licensed by the State as a psychotherapist, has been in practice for nineteen years, and has seen
over a thousand children in her practice, many of whom have been sexually abused. Packwood
reported that S.S.'s mother made an appointment for him in December 1998 and that she worked
with him until August 1999. She related that S.S. did not inform her of any sexual abuse for
five months after she began seeing him in her role as a clinical social worker, assessing and
treating S.S.'s depression. Packwood testified that a delayed outcry is a part of child abuse
syndrome, especially in young teenage boys who are reluctant, embarrassed, and fearful that they
will not be believed. She placed S.S. in this group. Thereafter, Packwood's interrogation became
lengthy, repetitious, and objection-laden.

 Assuming, as appellant claims, that the State's interrogation of Packwood crossed
the line and that Packwood testified directly as to S.S.'s truthfulness concerning the accusations,
we observe that not all the claimed errors were preserved for review. There was no objection, or
no timely objection, to some of the testimony cited by appellant. Nothing was preserved for review
as to that testimony. See Tex. R. App. 31.1. To preserve error for review, a timely and specific
objection must be made and followed by an adverse ruling. Id.; Turner v. State, 805 S.W.2d 423,
431 (Tex. Crim. App. 1991). A party must object every time allegedly inadmissible testimony is
offered in order to preserve error. Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App.
1991); (10) Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984); Scaggs v. State, 18 S.W.3d
277, 291 (Tex. App.--Austin 2000, pet. ref'd). Objections made after questions are asked and
answered do not preserve error. Russell v. State, 904 S.W.2d 191, 196-97 (Tex. App.--Amarillo
1995, pet. ref'd). As to some of the other testimony complained of by appellant, the only
objection was that the question was leading. Complaints on appeal must comport with the trial
objections or nothing is presented for review. Fuller v. State, 827 S.W.2d 919, 928 (Tex. Crim.
App. 1992); Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990); Carroll v. State, 911
S.W.2d 210, 218 n.3 (Tex. App.--Austin 1995, no pet.).

 There was some testimony to which appellant timely objected on the ground now
urged and secured an adverse ruling. The improper admission of evidence is not reversible error
when substantially the same facts are proven by unobjected-to testimony. Anderson v. State, 717
S.W.2d 622, 626-27 (Tex. Crim. App. 1986); Miranda v. State, 813 S.W.2d 724, 739 (Tex.
App.--San Antonio 1991, pet. ref'd). Overruling an objection to evidence will not generally result
in reversal where other evidence of that same fact was received without objection, either before or
after the complained-of ruling, regardless of whether the other evidence was introduced by the
defendant or the State. See Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (citing
Rogers v. State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993); Stoker v. State, 788 S.W.2d 1, 12
(Tex. Crim. App. 1989)). Point of error two is overruled. (11)


Exclusion of Psychiatric Report



 In his third point of error, appellant urges that the "trial court erred when it
excluded the psychiatric report of the child conducted by Dr. Dybell."

 Appellant attempted to introduce a "psychological evaluation" of the complaining
witness made by Dr. Elizabeth Dybell in December 1997 and January 1998. Appellant first
attempted to introduce the evaluation through S.S.'s mother, St. Germaine, and then through Carol
Wills, the principal of the public school S.S. attended. The State's hearsay objections were
sustained. Appellant was unable to convince the trial court of the applicability of the hearsay
exceptions that he urged. The report was offered but never admitted into evidence. Appellant did
not perfect a bill of exception or make an offer of proof. See Tex. R. Evid. 103(a)(2).


To preserve error in the exclusion of evidence, Rule 103(a)(2), like the common law,
requires that the substance of the evidence be shown by offer of proof . . . . 
Texas courts have consistently held that error in the exclusion of evidence may not
be urged unless the proponent perfected an offer of proof or bill of exception.



Steven Goode, Olin Guy Wellborn III & M. Michael Sharlot, Guide to the Rules of Evidence: Civil
and Criminal, § 103.3 at 21 (Texas Practice 2d ed.1993).

 In the absence of a bill of exception or offer of proof, we have no basis for reviewing
the contention that the trial court erred in excluding the evidence in question. See Stewart v. State,
686 S.W.2d 118, 122 (Tex. Crim. App. 1984). Appellant has not met his burden of showing the
substance of the excluded evidence. Kapuscinski v. State, 878 S.W.2d 248, 249 (Tex. App.--San
Antonio 1994, pet. ref'd). No error has been preserved. Howard v. State, 962 S.W.2d 119, 122
(Tex. App.--Houston [1st Dist.] 1997, pet. ref'd). The third point of error is overruled.


Factual Sufficiency


 In point of error four, appellant contends that the "evidence is factually insufficient
to prove Jonathan Irving Hitt sexually abused [S.S.]." Appellant does not distinguish between
the eight counts for which he was convicted in making this broad contention.

 A factual sufficiency review begins with the presumption that the evidence
supporting the judgment is legally sufficient. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). Appellant does not challenge the legal sufficiency of the evidence. In a factual
sufficiency review, we view the evidence without employing the prism of "in the light most
favorable to the verdict." Id. at 129. We consider all of the evidence impartially, comparing
evidence that tends to prove the existence of a disputed fact with evidence that tends to disprove
that fact. See Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Under the Clewis
standard of review, the verdict or judgment may be set aside only when it is so against the
great weight and preponderance of the evidence as to be clearly wrong and unjust. Clewis,
922 S.W.2d at 129. Of course, the trier of fact is the sole judge of the weight and credibility of
the testimony. Santellan, 939 S.W.2d at 164.

 Recently, the Court of Criminal Appeals noted that it was unclear whether Clewis
had adopted both civil factual sufficiency review standards for criminal cases. Johnson v. State,
23 S.W.3d 1, 10 (Tex. Crim. App. 2000). The Court proceeded to adopt both formulations used in
civil cases, viz: that evidence can be factually insufficient if (1) it is so weak as to be clearly wrong 
and manifestly unjust or (2) the adverse finding is against the great weight and preponderance of
the available evidence. Id. at 11. A judgment of conviction must be reversed and the cause
remanded for a new trial if a neutral review of all the evidence, both for and against the finding of
guilt, demonstrates that proof of the defendant's guilt is so obviously weak that it undermines
confidence in the jury's verdict, or is greatly outweighed by contrary proof. Id.; see Weatherred
v. State, 35 S.W.3d 304, 308 (Tex. App.--Beaumont 2001, pet. filed).

 In the instant case, S.S. and appellant directly contradicted each other from the
witness stand. There was evidence circumstantially supporting S.S. and contrary evidence
circumstantially supporting the defense. It was for the jury as fact-finder to resolve any conflicts
or inconsistencies in the evidence. Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App.
1982).  The fact-finder was also the judge of the credibility of the witnesses and could "believe all,
some, or none of the testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). 

 Appellant urges that Johnson distinguished Cain v. State, 958 S.W.2d 404 (Tex.
Crim. App. 1997), and that under Johnson absolute deference to the fact-finder is not the standard. 
See Johnson, 23 S.W.3d at 8-9. "The degree of deference a reviewing court provides must be
proportionate with the facts it can accurately glean from the trial record." Id. at 8. The Johnson
opinion added, however:


Unless the available record clearly reveals a different result is appropriate, an
appellate court must defer to the jury's determination concerning what weight to
give contradictory testimonial evidence because resolution often turns on an
evaluation of credibility and demeanor, and those jurors were in attendance when
the testimony was delivered. This evidence is then accorded the appropriate
consideration by the reviewing court in the context of its overall analysis of the
relevant evidence.



Id. at 8-9.


 In arguing that the evidence was factually insufficient, appellant contends S.S.
gave conflicting estimates as to the number of times he was sexually abused. Appellant argues that
"it is doubtful this testimony can rise to any evidence at all." Appellant further urges that the
outcry statement "was no more than the end product of consistent questioning" by S.S.'s mother and
"was further exacerbated by techniques used by the social worker. The combination of these
techniques helps in large part to explain the strong degree of vacillation" by S.S. Appellant refers
to record evidence showing that St. Germaine repeatedly asked S.S. questions, and that Susan
Packwood, the social worker, indicated that she would change her opinion if S.S. displayed the
same behavior characteristics before he went to the monastery. Appellant claims that S.S. "had
a reputation as being a person who had a loose connection with the truth." He argues that the
"State wanted to avoid the issue of whether this child was actually abused" and relied on Belcher
and Martinez to testify to extraneous matters that happened years before the alleged abuse. To
support this claim, appellant sets out in his brief the opening statement of the prosecution at the guilt-innocence stage of the trial which, of course, is not evidence.

 We have performed our own neutral review of all the evidence. We are permitted to
disagree with the fact-finder only if all the evidence demonstrates that appellant's guilt was so
obviously weak as to undermine our confidence in the verdict rendered, or if the State's case,
although adequate taken alone, is greatly outweighed by the contrary proof. We find neither
formulation present. The fourth point of error is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion*

Affirmed

Filed: July 26, 2001

Publish







* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   The current code is cited for convenience. Appellant was tried under Act of May 29, 1993,
73d Leg., R.S., ch. 900 § 1.01, 1993 Tex. Gen. Laws 3586, 3616 (Tex. Penal Code § 21.11 since
amended). The 1999 amendments to section 21.11 are not applicable here.
2.   The complainant's name in the indictment was a pseudonym. See Tex. Code Crim. Proc.
Ann. art. 57.02(b)(f) (West Supp. 2001); Stevens v. State, 891 S.W.2d 649, 651 (Tex. Crim. App.
1995). Appellant raises no issue concerning the use of the pseudonym. We will refer to the
complainant as "S.S." in this opinion.
3.   The details of her marriage and subsequent divorce were not fully developed at trial.
4.   Rule 404(b) provides:



 Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is
not admissible to prove the character of a person in order to show action in
conformity therewith. It may, however, be admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident, provided that upon timely
request by the accused in a criminal case, reasonable notice is given in
advance of trial of intent to introduce in the State's case-in-chief such
evidence other than that arising in the same transaction.
5.   Article 38.37 provides:


Sec. 1. This article applies to a proceeding in the prosecution of a defendant for
an offense under the following provisions of the Penal Code, if committed
against a child under 17 years of age:


(1) Chapter 21 (Sexual Offenses);


(2) Chapter 22 (Assaultive Offenses);


(3) Section 25.02 (Prohibited Sexual Conduct);


(4) Section 43.25 (Sexual Performance by a Child); or


(5) an attempt or conspiracy to commit an offense listed in this section.

 

Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence,
evidence of other crimes, wrongs, or acts committed by the defendant against the
child who is the victim of the alleged offense shall be admitted for its bearing on
relevant matters, including:


(1) the state of mind of the defendant and the child; and


(2) the previous and subsequent relationship between the defendant and the
child.


Sec. 3. On timely request by the defendant, the state shall give the defendant
notice of the state's intent to introduce in the case in chief evidence described by
Section 2 in the same manner as the state is required to give notice under Rule
404(b), Texas Rules of Criminal Evidence.


Sec. 4. This article does not limit the admissibility of evidence of extraneous
crimes, wrongs, or acts under any other applicable law.


(Emphasis added).
6.   Rule 402 provides:


All relevant evidence is admissible, except as otherwise provided by
Constitution, by statue, by these rules, or by other rules prescribed pursuant to
statutory authority. Evidence which is not relevant is inadmissible.

Tex. R. Evid 402
7.   The request was entitled:


Request for notice of State's intention to introduce bad acts, extraneous
offenses, or other misconduct on the part of the defendant at the trial of this
case pursuant to Texas Rule of Criminal Evidence, Rule 404(b).
8.   Rule 403 provides:


Although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.


Tex. R. Evid 403
9.   Both parties had indicated to the trial court that the evidence did not constitute "bad acts." 
Appellant was fearful the State would later turn the evidence into "bad acts."
10.   The two exceptions mentioned in Ethington are not here present.
11.   The State claims that appellant was the first to directly inquire into S.S.'s truthfulness
during cross-examination of Packwood. There can be no question that appellant fully explored the
issue. On cross-examination, Packwood stated that her job was to determine the treatment the child
needed and was not to determine if the allegations were "true or not." Appellant made use of this
testimony in his jury argument.





9 amendments to section 21.11 are not applicable here.
2.   The complainant's name in the indictment was a pseudonym. See Tex. Code Crim. Proc.
Ann. art. 57.02(b)(f) (West Supp. 2001); Stevens v. State, 891 S.W.2d 649, 651 (Tex. Crim. App.
1995). Appellant raises no issue concerning the use of the pseudonym. We will refer to the
complainant as "S.S." in this opinion.
3.   The details of her marriage and subsequent divorce were not fully developed at trial.
4.   Rule 404(b) provides:



 Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs or acts is
not admissible to prove the character of a person in order to show action in
conformity therewith. It may, however, be admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident, provided that upon timely
request by the accused in a criminal case, reasonable notice is given in
advance of trial of intent to introduce in the State's case-in-chief such
evidence other than that arising in the same transaction.
5.   Article 38.37 provides:


Sec. 1. This article applies to a proceeding in the prosecution of a defendant for
an offense under the following provisions of the Penal Code, if committed
against a child under 17 years of age:


(1) Chapter 21 (Sexual Offenses);


(2) Chapter 22 (Assaultive Offenses);


(3) Section 25.02 (Prohibited Sexual Conduct);


(4) Section 43.25 (Sexual Performance by a Child); or


(5) an attempt or conspiracy to commit an offense listed in this section.

 

Sec. 2. Notwithstanding Rul