Eric VASQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–97–00224–CR.

Court of Appeals of Texas,
Austin.

Aug. 31, 1998.

Rehearing Overrulled Sept. 24, 1998.

Don Morehart, Law Office of Don Morehart, Austin, for Appellant.

Charles D. Penick, Criminal District Attorney, Forrest L. Sanderson, Assistant Criminal District Attorney, Bastrop, for State.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

ABOUSSIE, Justice.

A jury found appellant guilty of sexual assault and assessed punishment at imprisonment for ten years. *See* Tex. Penal Code Ann. § 22.011(a)(2)(D) (West Supp.1998). In his only point of error, appellant contends the district court erroneously permitted the

State to adduce expert testimony that the complaining witness's accusations were truthful.[1] In our opinion on original submission, we overruled the point of error on the ground that appellant voiced no contemporaneous objection to the allegedly improper testimony. In his motion for rehearing, appellant for the first time refers us to that portion of the reporter's record at which pertinent objections were made and overruled. Finding that the point of error was preserved, we withdraw our original opinion and judgment. Because we conclude that the district court did not err by admitting the testimony, we will overrule the motion for rehearing and again affirm the judgment of conviction.

The relevant background facts may be briefly stated. Appellant is the complainant's stepfather. Appellant and the complainant's mother were divorced when the complainant was five years old, and thereafter appellant moved alone to California. In 1992, when the complainant was twelve, his mother was killed in an automobile accident. Appellant assumed custody of the complainant and his two younger sisters (appellant's daughters), taking them to live in California for about one year before returning to Texas. In April 1996, when he was sixteen years old, the complainant told his high school counselor that he was being physically abused at home. During a subsequent interview by a child protective services worker, the complainant made his outcry regarding sexual abuse. In his statements to interviewers and in his trial testimony, the complainant described repeated episodes of sexual activity during which appellant would cause the complainant's penis to penetrate appellant's anus.

The witness whose testimony is at issue was Dr. Cecil Reynolds, a psychologist on the faculty at Texas A & M University. Reynolds conducted a psychological evaluation of the complaining witness. This evaluation included a procedure called statement validity assessment. Reynolds explained the procedure as follows:

> The statement validity assessment is a process that we go through when we engage in an analysis of what a child has told us in the form of a written transcript to determine whether or not that statement contains certain characteristics that have been shown in research since the 1950's that are present in accounts of real events, versus accounts of events that may be delusional, hallucinatory or just fabricated. The hypothesis is that of things that you have actually experienced in your life, when you describe them you describe them differently than things that you have never experienced, that there are certain elements of that description, certain details of that description that appear if you have really experienced it versus if you have not.

Reynolds testified that statement validity assessment is generally accepted and widely used in the psychological community and that at least two studies have found it to be "near to one hundred percent accurate." Reynolds stated that statement validity assessment is used in therapeutic settings "to determine whether or not in fact a child had been abused or if there were other problems that were causing them to present to you that they had been abused."[2]

With respect to the complainant, Reynolds testified that "there were concerns expressed ... not only about his emotional state but whether or not he had in fact been sexually assaulted. He had made an outcry about that and there were some concerns expressed to me about whether or not that had happened." After relating the complainant's statement to him describing the alleged assaults, Reynolds analyzed it for the jury:

> Some of the things are that he's given me a logical structure for this story, so

---

1. Appellant's point of error characterizes the alleged error as improper "bolstering" of the complainant. We have restated the point to more accurately reflect the substance of appellant's contention. As to the continued validity of a bolstering objection, see *Cohn v. State*, 849 S.W.2d 817, 819–21 (Tex.Crim.App.1993).

2. Appellant does not question the reliability of statement validity assessment. *See Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992); *Nations v. State*, 944 S.W.2d 795, 797 (Tex.App.— Austin 1997, pet. ref'd). *See also Nenno v. State*, 970 S.W.2d 549 (Tex.Crim.App.1998) (applying *Kelly* to nonscientific expert testimony).

he's provided that had [sic] already. It just flows in some sense. And he's included some things that are kind of relevant, like he said, "well, me and my sisters and [appellant] had come home from school and we watched TV for a while." That's something you look for when people have actually experienced something. So he placed it into a context. He described something that is logical and possible. He has described some things that typically at his age would not be unheard of for him to know but describing the process of [appellant] putting jelly on him before he penetrated him is something that at his age is something a little more unusual.

. . .

Then he goes on and he tells about something that didn't happen, which is another characteristic that he didn't make up. He's anxious for me to know, because he said he never intruded [sic] me. So that is of significance as well.[3]

Reynolds indicated that it would be "very adverse" to a teenaged boy's normal mental state to "make up a story" involving repeated homosexual experiences. Reynolds added that the complainant exhibited several symptoms consistent with sexual abuse: guilt, restricted affect, hypervigilance, flashbacks and "thought intrusion," dissociation from his feelings, and conduct problems.

■ Expert testimony that a child exhibits behavioral characteristics that have been empirically shown to be common among children who have been sexually abused is relevant and admissible as substantive evidence under rule 702. *Yount v. State*, 872 S.W.2d 706, 709 (Tex.Crim.App.1993); Tex.R. Evid. 702.[4] *See also Cohn v. State*, 849 S.W.2d 817, 819–21 (Tex.Crim.App.1993) (such testimony not objectionable as "bolstering"). On the other hand, an expert witness may not testify directly that a particular witness is truthful, or that a class of persons to which the witness belongs is truthful. *Yount*, 872 S.W.2d at 711. Reynolds's testimony that the complainant exhibited symptoms consis-

tent with sexual abuse was clearly admissible under the authority of *Yount* and *Cohn*, and appellant does not argue otherwise. Appellant contends, however, that Reynolds's testimony regarding the statement validity analysis of the complainant's outcry violated *Yount* because it constituted direct testimony that the complainant's accusations were true.

Our disposition of this contention is controlled by *Schutz v. State*, 957 S.W.2d 52 (Tex.Crim.App.1997). In that case involving the aggravated sexual assault of a six-year-old girl, a social worker and a psychologist testified as to whether the girl's accusations were the product of manipulation or fantasy. The Court of Criminal Appeals held that evidence that a person's recitation of events is or is not the product of manipulation or fantasy is, in effect, particularized testimony concerning the person's credibility. *Id.* at 69. The court continued:

[E]vidence of manipulation and fantasy, whether relating to mental capacity or moral disposition [to tell the truth], should be analyzed under the same rules that govern evidence of truthful or untruthful character. Under Rule 608(a), a party may attack a witness' or other declarant's *general* capacity or disposition to tell the truth. The other party may respond to such an attack with evidence supporting that persons's *general* capacity or disposition for truthfulness.... General capacity evidence includes whether a person can distinguish between reality and fantasy and/or whether the person's physical or mental condition adversely affects a persons's ability to accurately perceive and/or relate events....

Likewise, a party may attack the credibility of a witness or other declarant by offering the following kinds of manipulation evidence: (a) evidence that the person is, in general, the kind of person who is easily manipulated, (b) common signs or symptoms of manipulation and evidence that the person displays some or all of these signs or symptoms, and (c) evidence

---

**3.** Reynolds testified that he understood "intruded," as used by the complainant, to mean "penetrated."

**4.** Present rule 702 is identical to Texas Rule of Criminal Evidence 702 at issue in *Yount* and in effect at the time of appellant's trial.

of third person acts or words designed to manipulate. The other party may respond to such attacks with (a) evidence that the person is *not*, in general, the kind of person who is easily manipulated, (b) common signs or symptoms of manipulation and evidence that the person does *not* display these signs or symptoms of manipulation, and (c) evidence rebutting the existence of third person acts or words of manipulation....

> ...
>
> However, evidence that a persons's allegations are the result of manipulation or fantasy is inadmissible. Such evidence never assists the jury because the jury is just as capable as the expert of drawing the conclusions involved.

*Id.* at 69–71 (footnotes omitted). *Schutz* then created an exception to the rule prohibiting direct testimony that an accusation is not the result of manipulation or fantasy: a party may offer such evidence in response to evidence directly attacking the accusation on the same basis. *Id.* at 71–72. In this regard, the court added:

> [I]t [is] important to distinguish proper rebuttal testimony under Rule 608(a) and comments on credibility that fall outside of that provision. Although some minimal relevance is required, general evidence supporting truthful character as outlined by Rule 606(a) may be liberally employed to respond to attacks on truthful character: there need only be a "loose fit" between the rebuttal evidence and the predicate attacks on character.... But, evidence that falls outside the recognized rebuttal category in Rule 608(a) is illegitimate and a much more specific showing of relevance must be shown: there must be a "tight fit" between the rebuttal evidence and the predicate attacks on character.

*Id.* at 72; *and see id.* at 75–76 (appendix to opinion).

In *Schutz,* the court concluded that the social worker's testimony that the child did not exhibit the traits of manipulation was not a direct comment on the truth of her allegations and was properly admitted. *Id.* at 73. On the other hand, the social worker's testimony that she found no evidence that the child was fantasizing, and the psychologist's testimony that, in his opinion, the child had not been manipulated and her statements were not the result of fantasy, were direct comments on the child's truthfulness and should not have been admitted. *Id.*

We believe that statement validity analysis testimony is comparable to the manipulation and fantasy testimony at issue in *Schutz.* Testimony that an analysis of a person's statement indicates that the person did or did not actually experience the facts related in the statement constitutes particularized testimony concerning the person's credibility. Under the framework set forth in *Schutz,* general testimony to the effect that a person's statement contains characteristics that are commonly present in accounts of real events is admissible to rebut attacks on the statement's credibility, provided there is a loose fit between the rebuttal testimony and the predicate attacks. *Id.* at 72 *and* appendix at 76. Specific testimony that statement validity analysis indicates that the person's statement is in fact an account of real events is usually inadmissible, and may be adduced only to rebut specific testimony that such analysis indicates that the statement is not an account of real events. *Id.*

We now apply this analysis to Reynolds's testimony. Reynolds testified that the complainant's statement had a logical structure and context, "something you look for when people have actually experienced something." He also noted that the complainant "tells about something that didn't happen," which is another characteristic of statements that are not fabricated. Finally, Reynolds indicated that it would be "very adverse" to a teenaged boy's normal mental state to fabricate a story involving repeated homosexual experiences. In effect, Reynolds testified that the complainant's statement had characteristics commonly found in descriptions of actual events. Such general support for the complainant's credibility was admissible under *Schutz* to rebut appellant's defensive theory, first articulated during defense counsel's opening statement and later pursued during counsel's cross-examination of the various witnesses, that the complainant had falsely

accused appellant of sexual misconduct because he resented appellant's strict discipline and wanted to live with his grandparents.

Reynolds's testimony is distinguishable from the testimony at issue in *Kirkpatrick v. State,* 747 S.W.2d 833 (Tex.App.—Dallas 1987, pet. ref'd), cited by appellant. In that case, two psychologists each testified that her training and experience qualified her to determine whether a child's outcry statement was true or imaginary, and that in her opinion the child was relating an actual experience, not an imaginary one. This was direct testimony that the child was telling the truth, and was inadmissible under *Schutz* analysis absent similar expert testimony directly attacking the child's credibility.

We note that Reynolds testified outside the jury's presence that "the statement validity assessment indicates a very high probability that the events [the complainant] described were in fact within his experience." We understand the district court to have overruled appellant's objection to this testimony. That ruling was erroneous. Had this testimony been adduced before the jury, it would have constituted direct testimony that the complainant's statement was true, comparable to that deemed inadmissible in *Schutz* and *Kirkpatrick.* While appellant's general attack on the complainant's credibility authorized the State to respond with Reynolds's testimony that the complainant's statement had characteristics commonly found in descriptions of actual events, it did not open the door to Reynolds's conclusion that the complainant's statement was in fact true.

For the reasons stated, we hold that Reynolds's testimony before the jury generally supporting the complainant's credibility was properly admitted to rebut appellant's general attack on the complainant's credibility. The point of error is overruled.

The motion for rehearing is overruled and the judgment of conviction is affirmed.