NO. 12-03-00306-CR
 12-03-00307-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
RUSTY RANDALL JOHNSON,                       §                 APPEAL FROM THE 8TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 HOPKINS COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Rusty Randall Johnson appeals his convictions for indecency with a child and aggravated
sexual assault of a child. After finding him guilty, the jury assessed punishment at twenty years of
confinement and a ten thousand dollar fine for each of three counts of indecency with a child and
ninety-nine years of confinement and a ten thousand dollar fine for the offense of aggravated sexual
assault of a child. Appellant raises three issues complaining of the expert’s testimony and that his
constitutional guarantee against double jeopardy has been violated. We affirm. 
 
Expert Testimony
            In his first issue, Appellant contends the trial court erred by allowing Kathy Smedley to
testify as an expert on child sexual abuse because the State did not show by clear and convincing
evidence that her testimony was sufficiently reliable and relevant to assist the jury. He complains
that no sworn testimony was offered concerning what her testimony would be and the State did not
attempt to show that her testimony was reliable.
 
Applicable Law
            We review a trial judge’s determination that a witness is or is not qualified as an expert
witness under an abuse of discretion standard. Morales v. State, 32 S.W.3d 862, 865 (Tex. Crim.
App. 2000). We will uphold the trial court’s ruling if it was within the zone of reasonable
disagreement. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). Evidence is
relevant if it has any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the evidence. 
Tex. R. Evid. 401. If specialized knowledge will assist the trier of fact, a witness qualified as an
expert by knowledge, skill, experience, training, or education may testify thereto. Tex. R. Evid. 702. 
Reliability is the cornerstone of determining the admissibility of such testimony. State v. Medrano,
127 S.W.3d 781, 784-86 (Tex. Crim. App. 2004). Fields such as psychology and sociology are
considered “soft” sciences and are based primarily upon experience and training as opposed to the
scientific method. Weatherred, 15 S.W.3d at 542 n.5; Nenno v. State, 970 S.W.2d 549, 561 (Tex.
Crim. App. 1998). The reliability of “soft” science evidence may be established by showing that the
field of expertise involved is a legitimate one, the subject matter of the expert’s testimony is within
the scope of that field, and the expert’s testimony properly relies upon or utilizes the principles
involved in that field. Nenno, 970 S.W.2d at 561. The special knowledge that qualifies a witness
to give an expert opinion may be derived from specialized education, practical experience, a study
of technical works, or a varying combination of these things. Wyatt v. State, 23 S.W.3d 18, 27 (Tex.
Crim. App. 2000).
Discussion
            The State presented the testimony of Kathy Smedley, Program Director of the Northeast
Texas Child Advocacy Center, a non-profit agency that investigates and counsels victims of child
abuse. She holds a Bachelor’s Degree in social work with a minor in psychology. She also holds
a Master’s Degree in counseling with a specialization in marriage, family, and children. She became
a licensed professional counselor in 1989 and earned her license in marriage and family therapy in
1992. She is an approved supervisor for both licenses and has training as a forensic interviewer. She
has been working in the field of counseling since January 1987. Smedley described the mechanics
of a forensic interview with a child, explaining that the goal is to provide an opportunity to give
information about any abuse the child may have experienced. She receives continuing education on
an annual basis on the subject of sexual abuse of children. She also has specialized training in that
area. Through private practice and employment, from 1989 until the time of the trial in 2003, she
has had experience in providing assistance to children who have been victims of sexual abuse. She
has kept up to date with the literature and surveys within the field. Smedley explained that she has
training to help her determine when someone is lying but cannot say for certain when someone is
lying or when they have been manipulated. This training focuses on nonverbal communication and
styles of communication that are subject to different interpretations by different people. She has not
been tested to see if she can accurately determine if someone is telling the truth. The judge found
that Smedley “seems to have tremendous expertise and training in this area.”
            Smedley testified that a delay of disclosure is common for a number of reasons. The child
may be afraid of the abuser and what might happen to the child or her family if she tells. Also, the
child may feel overwhelmed and not know how to articulate the experience or may be afraid she will
be removed from the family. The child may feel guilt and confusion. The closer the relationship and
role of the abuser, the more devastation the abuse can cause. Signs commonly exhibited by victims
of child sexual abuse include regression, nightmares, aggressive behavior, increased fearfulness, drug
use, difficulty in school, acting out sexually, running away from home, eating disorders, suicide
attempts, and low self-esteem. Further, typically, abused children are very worried about how others
will react to knowledge of the abuse. 
            After reviewing the record, we cannot conclude the trial court erred in allowing Smedley’s
testimony. Based on her many years of education, training, and experience with victims of child
sexual abuse, the State demonstrated the reliability of Smedley’s expert testimony. See Duckett v.
State, 797 S.W.2d 906, 908, 917 (Tex. Crim. App. 1990) (Qualified expert was allowed to testify
about reactions of victims of familial child abuse.); Dennis v. State, No. 01-04-00514-CR, 2005 Tex.
App. LEXIS 5295, at *24 (Tex. App. –Houston [1st Dist.] July 7, 2005, no pet.). Furthermore, her
testimony was clearly relevant to the issues in this case. See Vasquez v. State, 975 S.W.2d 415, 417
(Tex. App.–Austin 1998, pet. ref’d) (op. on reh’g) (Testimony by expert witness that a child exhibits
behavioral characteristics that have been empirically shown to be common among children who have
been sexually abused is both relevant and admissible as substantive evidence.). A qualified social
worker demonstrating expertise in the field of child sexual abuse can testify to background patterns
found in exploited children and can offer opinions of whether the complainant’s statements
demonstrate a pattern consistent with other exploited children. Duckett, 797 S.W.2d at 915-17. 
Expert testimony helps the jury understand the seemingly illogical behavior of the child who changes
her story, seems confused, and does not immediately disclose a sexual assault. Id. at 916. Such
testimony is clearly relevant for the jury to consider in determining whether Appellant is guilty of
aggravated sexual assault of a child and indecency with a child. We overrule Appellant’s first issue.
 
Testimony as to Truthfulness of Complainant
            In his second issue, Appellant asserts the trial court erred by allowing the State’s expert to
give expert opinion testimony as to the truthfulness of the complaining witness. He complains that
Smedley improperly testified that the complainant was not manipulated and that less than two
percent of child sexual abuse victims are coached to bring these charges. Further, he asserts the State
used this testimony in its final argument to convince the jury that it should believe the child’s
testimony, that she was telling the truth, and had not been manipulated. 
            Appellant complains of the following exchange on re-direct:
 
              [Prosecutor]:        And when you’re dealing with a situation like you testified about
divorce cases and things of that sort, is a sexual abuse allegation
something that’s commonly manipulated and coached out of
kids?
 
              [Smedley]:           No, it’s not.
 
              [Prosecutor]:        Do you know what percentage?
 
              [Smedley]:           I’ve researched that statistic and I understand less than two
percent of children are coached to say sexual abuse allegations.
 
              [Prosecutor]:        And is that something that you can usually determine from the
interview process and the facts and the circumstances?
 
              [Smedley]:           We do inquire as to statements the children may have been told
by someone and who talked with them about it and have they told
them to say something or not say something. So we inquire
about that many times.
 
              [Prosecutor]:        Is there anything about the interview with [K.T.] that you
conducted that suggested that type of a situation involving her
mother?
 
              [Smedley]:           No, there is not.
 
              [Prosecutor]:        You’ve been involved in divorce cases and that sort of thing. 
Did this appear to be a divorce custody battle? I guess you’ve
seen that type of thing?
 
              [Smedley]:           I have seen that.
 
              [Prosecutor]:        Is that what that appeared to be here?
 
              [Smedley]:           It did not appear to be that, no.


Applicable Law
            An expert witness may not testify that a witness is truthful. Yount v. State, 872 S.W.2d 706,
712 (Tex. Crim. App. 1993). Further, evidence that a person’s allegations are the result of
manipulation or fantasy is inadmissible. Schutz v. State, 957 S.W.2d 52, 70 (Tex. Crim. App. 1997). 
Such evidence never assists the jury because the jury is just as capable as the expert of drawing the
conclusions involved. Id. at 70-71. However, a party may attack the credibility of a witness or other
declarant by offering the following kinds of manipulation evidence: (a) evidence that the person is,
in general, the kind of person who is easily manipulated, (b) common signs or symptoms of
manipulation and evidence that the person displays some or all of these signs or symptoms, and (c)
evidence of third person acts or words designed to manipulate. Id. at 70. The other party may
respond to such attacks with (a) evidence that the person is not, in general, the kind of person who
is easily manipulated, (b) common signs or symptoms of manipulation and evidence that the person
does not display these signs or symptoms, and (c) evidence rebutting the existence of third person
acts or words of manipulation. Id. 
Discussion
            The complained-of testimony does not appear to fit into any of these categories of acceptable
manipulation evidence. However, before the jury heard the complained-of testimony, defense
counsel cross-examined Smedley, asking her about manipulation of children who make allegations
of sexual abuse. In general, Smedley answered affirmatively. Counsel asked Smedley if K.T., the
complainant, could have lied about her accusations against Appellant, K.T.’s stepfather. He asked
her if she tries to get the first interview at the Advocacy Center done as soon as practicable “to take
outside influences away from the child so that they can’t be coerced or change their statement or to
bolster their statement.” He asked her if she has seen children whose parents were going through
divorces and whether she agreed that divorce and custody can be very ugly. He asked her if she had
seen children being manipulated by their parents and whether children could be manipulated easily
by a parent. He clarified that he was talking about situations where a parent has the ability to
communicate with the child without the other side knowing about it on a “repeated daily basis.” He
asked Smedley if she thought one parent, who has daily access to the child and makes negative
comments about the other person, “takes over that child’s mind.” He then asked, hypothetically,
whether there could be manipulation of the child if a mother despises her ex-husband and she has
seventy-five days to talk to that child about that ex-husband. And, further, he asked if that child
would end up parroting or repeating what her mother wants her to say. 
            Counsel also asked if the situation would be worse if the child is naive and gullible. Smedley
continued to agree to counsel’s questions that if the child desperately wanted to please the person
who is talking to her and if the parent that has access to the child constantly demeans the child, that
could add pressure. She agreed that calling the child names constitutes verbal abuse. Smedley also
agreed it was possible that, if the child wants to be the center of attention and is manipulated by a
parent and suddenly the child gets to be the center of attention, this factor may enable a parent to
easily manipulate the child. Counsel then told Smedley that K.T. spoke to her counselor about the
allegations against Appellant on July 13, 2001 and noted that was seventy-three days before K.T.
spoke to Smedley. He then asked if she would agree that if K.T. was living with her mother, and for
seventy-three days her mother was talking to her, it could have an impact on K.T.’s statement. 
Smedley responded, “It’s possible.”
            Thus, during cross-examination, defense counsel engaged in extensive questioning of
Smedley on the subject of manipulation. The questions were of a general nature and involved
hypotheticals. Counsel did not, however, attack K.T.’s credibility by offering the type of admissible
manipulation evidence set out above. Accordingly, these questions regarding the possibility that a
child can be manipulated by her mother opened the door to the State’s questioning on that subject
on re-direct. See Feldman v. State, 71 S.W.3d 738, 755-56 (Tex. Crim. App. 2002) (The defense
may open the door to otherwise inadmissible evidence.); Dotson v. State, No. 11-03-00013-CR,
2004 Tex. App. LEXIS 4290, at *9-10 (Tex. App.–Eastland May 13, 2004, pet. ref’d) (not
designated for publication) (Appellant opened the door to questions by the State about the percentage
of children making false allegations of sexual abuse by inquiring about a parent implanting
falsehoods into a child’s mind.). We overrule Appellant’s second issue.
 
Double Jeopardy
            In his third issue, Appellant asserts that his conviction for aggravated sexual assault of a child
and three convictions for indecency with a child by contact violate state and federal constitutional
guarantees against double jeopardy. Without identifying the elements, he argues generally that the
elements of the offense of indecency with a child by contact were included within the aggravated
sexual assault charge and based on the same conduct. Therefore, he argues, the two offenses are the
same for double jeopardy purposes. He further contends that the trial court erred in not including
an instruction in the jury charge which informed the jury that it could not find him guilty of the
greater offense of aggravated sexual assault and also the lesser included offense of indecency with
a child by contact if they stemmed from the same incident and conduct.
Applicable Law
            Appellant does not separately argue the state and federal constitutional claims or argue that
the Texas double jeopardy clause differs in any significant way from the Fifth Amendment to the
United States Constitution. We therefore consider the double jeopardy challenge solely under the
federal constitution. See Jackson v. State, 992 S.W.2d 469, 475 n.8 (Tex. Crim. App. 1999);
Johnson v. State, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992).
            The double jeopardy clause of the Fifth Amendment protects against a second prosecution
for the same offense after acquittal or conviction and against multiple punishments for the same
offense. Illinois v. Vitale, 447 U.S. 410, 415, 100 S. Ct. 2260, 2264, 65 L. Ed. 2d 228 (1980). 
When a defendant is tried in a single trial only the aspect of the double jeopardy protections against
multiple punishments is involved. Ex parte Herron, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990)
(op. on reh’g). The test for determining whether two offenses are not the same is whether either
offense requires proof of a fact which the other does not. Blockburger v. United States, 284 U.S.
299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932). 
            Convictions of both the greater inclusive and lesser included offense arising out of the same
act violates the multiple punishments prohibition. Hutchins v. State, 992 S.W.2d 629, 632 (Tex.
App.–Austin 1999, pet. ref’d, untimely filed). In Texas, an offense is considered to be included
within another if, among other things, it is established by proof of the same or less than all of the
facts required to establish the commission of the offense charged. Tex. Code Crim. Proc. Ann. art.
37.09(1) (Vernon 1981); Parrish v. State, 869 S.W.2d 352, 354 (Tex. Crim. App. 1994). With
respect to sexual offenses, the Texas Court of Criminal Appeals has determined that the legislature
intended to punish separate acts, even though such acts might be in close temporal proximity, and
has rejected grouping aggravated sexual assaults by transaction. Vick v. State, 991 S.W.2d 830, 833
(Tex. Crim. App. 1999). If the acts are separate, Blockburger is not implicated. Id.
Discussion
            The first indictment alleged that Appellant caused the penetration of K.T.’s sexual organ by
Appellant’s finger on or about July 1, 1998. The second indictment charged Appellant with three
counts of indecency with a child by contact on or about July 1, 1998. Specifically, those paragraphs
alleged that Appellant caused K.T. to touch Appellant’s genitals and that Appellant touched K.T.’s
breast and her genitals. 
            In order to prove aggravated sexual assault, the State was not required to prove Appellant
touched K.T.’s breast or that he caused her to touch his genitals. The legislature intended to punish
these acts as separate offenses and counts one and two of the indecency indictment are not lesser
included offenses of aggravated sexual assault. See Act of June 19, 1993, 73rd Leg., R.S., ch. 900,
§ 1.01, 1993 Tex. Gen. Laws 3616 (amended 1999, 2001) (current version at Tex. Pen. Code Ann.
§ 21.11 (Vernon 2003)); Act of June 20, 1997, 75th Leg., R.S., ch. 1286, § 2, 1997 Tex. Gen. Laws
4911-12 (amended 1999, 2001, 2003) (current version at Tex. Pen. Code Ann. § 22.021 (Vernon
Supp. 2004-05)). Accordingly, there is no double jeopardy violation with regard to these counts. 
See Tex. Code Crim. Proc. Ann. art. 37.09(1); Vick, 991 S.W.2d at 833.
            Count three of the indecency with a child indictment alleged that Appellant touched K.T.’s
genitals, an act necessarily included in the act of penetrating her sexual organ with his finger. See
Patterson v. State,152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (Exposure was incident to and
subsumed by the aggravated sexual assault and penetration by Appellant’s genitals required contact
with Appellant’s genitals.). Accordingly, to determine whether the double-jeopardy guarantee was
violated with regard to count three, we must consider the evidence adduced at trial. See Ochoa v.
State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998) (The court looked to evidence presented by the
State to determine whether the offense charged included proof of a lesser included offense.). K.T.
testified that Appellant touched her vagina more than once. She also testified that her family lived
in several different counties and in Indiana and that the inappropriate behavior began while they
lived in Indiana. However, she did not specify a date or location with regard to this touching. She
testified specifically about one day, while they lived in Hopkins County, when Appellant touched
her breasts, put his fingers in her vagina, and made her touch his penis. She also stated that he did
those three acts to her more than one other time, but she did not say where or when. 
            The State offered into evidence a videotape of Smedley’s September 24, 2001 interview with
K.T. She was fourteen at the time of the interview. During that interview, K.T. explained that she
and her family were living in Indiana when Appellant first touched her inappropriately. She said he
started by rubbing and touching her breasts and vagina over her clothes and then he would touch her
under her clothes. He also put his fingers in her vagina and made her touch his penis. She said the
same things happened in Texas. She explained that the family moved to Dike, Texas in the summer
that she was eleven years old. She specifically remembered that the first time it happened in Texas
was July 1st or 2nd and it continued over the summer. The last time it happened was a couple of
weeks before school started. She stated that he put his fingers in her vagina six or seven times that
summer and made her touch his penis three or four times that summer. 
            The evidence shows that Appellant penetrated K.T.’s sexual organ six or seven times. The
act of touching her genitals is necessarily included in that act. However, the record also shows that
Appellant touched her genitals at other times during the summer of 1998 in Hopkins County. 
Accordingly, under the facts presented here, the offense of indecency with a child by contact as
alleged in count three of the second indictment was not included within the aggravated sexual assault
alleged in the first indictment. See id. at 907-08. Therefore, Appellant’s conviction for indecency
with a child by touching her genitals is not based on the same conduct for which he was convicted
of aggravated sexual assault and he did not receive multiple punishments for the same offense in
violation of the Fifth Amendment guarantee against double jeopardy. We overrule Appellant’s third
issue.
 
Conclusion
            The trial court did not err in allowing Kathy Smedley to testify as an expert on child sexual
abuse. Smedley’s testimony about manipulation was invited by the defense. Appellant’s convictions
for aggravated sexual assault and indecency with a child by contact do not violate constitutional
guarantees against double jeopardy.
            We affirm the trial court’s judgments.
 
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 


Opinion delivered September 7, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

















(DO NOT PUBLISH)