DENTON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-044-CR

MICHAEL RAY DENTON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

INTRODUCTION

A jury convicted Appellant Michael Ray Denton of aggravated sexual assault and assessed his punishment at twenty years’ confinement.  In five issues, Appellant contends that the trial court erred by (1) excluding the testimony of expert witness Leon Peek, Ph.D., (2) excluding the testimony of witness Lisa Denton, (3) refusing to submit the lesser included offense of assault in the jury charge, (4) admitting the testimony of sexual assault nurse examiner Patricia Sedge, and (5) admitting outcry testimony in violation of article 38.072 of the Texas Code of Criminal Procedure.  We affirm.

BACKGROUND

The complainant in this case is C.D., who was six-years-old at the time of trial.  One morning in April 2004, Margaret Radcliff was serving breakfast at an elementary school when C.D. came through the cafeteria line, gave Ms. Radcliff a “horrified, scared look,” and pointed to a hickey on his neck.  Ms. Radcliff took C.D. to the school counselor’s office, and Laura Rangale, C.D.’s teacher, was called to the office as well.  Ms. Rangale testified that when she walked into the office, C.D. began to cry.  When she asked him what was wrong, C.D. replied that his dad said that they would take him away if he told her what happened.  Ms. Rangale again asked C.D. what happened, and C.D. replied that he, his little brother, and his dad were sleeping in the bed the night before when his dad rolled over and began sucking on his neck.  C.D. said that he tried to stop his dad, but his dad was asleep and would not stop.  C.D. denied that his father put his mouth or hands anywhere else on his body, and he denied that his father had touched his little brother.  C.D. said that the next morning, he told his dad that he was going to tell, and his dad said that he could tell, but they would not believe him.  

On April 20, 2004, Dena Hill, an investigator for Child Protective Services at the time, interviewed C.D.  She testified that she observed a hickey on C.D.’s neck.  C.D. told her that he got it by his dad kissing his neck.  C.D. also told her that his dad had pulled down his underwear and put “his wee-wee in his bottom.”  Using a diagram, C.D. indicated where the bottom was and that a “wee-wee” meant the penis.  C.D. said that this had happened on two separate occasions, one time at his dad’s trailer and the other at his Granny’s. 

Detective Shane Kizer, who had watched Ms. Hill interview C.D., believed a further investigation was warranted; therefore, he contacted Appellant, C.D.’s father, who agreed to go to the police department and give a statement.  The interview was videotaped, and the videotape was admitted into evidence and played for the jury at trial.  During the interview, Appellant denied sexually assaulting C.D.  However, Appellant also stated that his son was not a liar and had no reason to lie.  After the interview, Detective Kizer took Appellant home and then contacted a sexual assault nurse examiner to conduct a sexual assault exam on C.D. 

Sexual Assault Nurse Examiner Patricia Sedge performed the sexual assault exam on C.D.  She noted that C.D. had a bruise on his neck.  C.D. told her that his dad had kissed him on the neck.  He also told her that his dad had had sex with him on two different occasions.  Using diagrams, C.D. indicated that “sex” meant the penis touching the bottom.  After talking to C.D., Ms. Sedge then performed a physical exam.  She noted C.D. had point tenderness at the 6:00 position, indicating some underlying tissue trauma at the bottom part of the anus.  Ms. Sedge testified that this was consistent with C.D.’s history.  Ultimately, Ms. Sedge testified that she “recorded sexual assault by history, normal exam, no genital trauma visualized on physical exam.” 

C.D. also testified at trial.  He stated that he remembered going to school with a hickey on his neck.  He had gotten it by his dad sucking on his neck.   C.D. also testified that his dad had “rubbed his pee-pee on my butt.”  He stated that this had happened before at his Granny’s.  

A jury convicted Appellant of aggravated sexual assault and assessed his punishment at twenty years’ confinement.  The trial judge entered judgment accordingly.  Appellant filed this appeal.   

DR. PEEK’S TESTIMONY

In his first issue, Appellant contends that the trial court erred by excluding the testimony of expert witness Leon Peek, Ph.D.  The State responds, however, and we agree, that Dr. Peek’s testimony was properly excluded because the opinion he wanted to give the jury was essentially that the victim’s testimony was not credible. 

We review a trial court’s decision to admit or exclude scientific expert testimony under an abuse of discretion standard.  
Sexton v. State
, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002); 
Weatherred v. State
, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  Thus, we must uphold the trial court’s ruling if it was within the zone of reasonable disagreement.  
Sexton
, 93 S.W.3d at 99; 
Weatherred
, 15 S.W.3d at 542.

Under Texas Rule of Evidence 702, 
an expert witness may testify if his scientific, technical or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact issue.  
Tex. R. Evid. 
702
.  However, the expert’s testimony must aid the trier of fact and not supplant its determination.  
Schutz v. State
, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).  Expert testimony does not assist the trier of fact when it constitutes a direct opinion on the truthfulness of a child complainant’s allegations.  
Id.
; 
Yount  v. State
, 872 S.W.2d 706, 711, n.8 (Tex. Crim. App. 1993).  Further, expert testimony that a child complainant’s allegations are the result of manipulation or fantasy is inadmissible.  
See Schutz
, 957 S.W.2d at 70.  Such evidence never assists the jury because the jury is just as capable as the expert of drawing the conclusions involved.  
Id. 
at 70-71.

Here, after C.D. testified, the trial court conducted a hearing outside the presence of the jury to determine the admissibility of Dr. Peek’s testimony.  At the hearing, Dr. Peek testified that although he could not form an opinion about whether C.D.’s testimony was truthful, he opined that C.D. had memorized his testimony and that he was reciting a story that he had learned in previous interviews.  As the basis for his opinion, Dr. Peek referred to C.D.’s testimony at trial, noting that it was “very remembered or mechanical” as C.D. would answer different questions with the same words.
(footnote: 2)  

As the State points out, the court of criminal appeals in 
Schutz
 discussed “learned memory” under the heading of manipulation.  
Id.
 at 60-61.  And the court held that evidence that a child complainant’s allegations are the result of manipulation is inadmissible.  
Id. 
at 70.  Here, Dr. Peek’s opinion was not merely that C.D. exhibited characteristics associated with one who was reciting a story that he had memorized from previous interviews, nor was he merely going to testify that C.D. was easily manipulated.  
Cf. id. 
at 73 (holding expert testimony that complainant did not exhibit behaviors of manipulation admissible because it did not constitute a direct comment on the truth of the complainant’s allegations); 
Vasquez v. State
, 975 S.W.2d 415, 418-19 (Tex. App.—Austin 1998, pet. ref’d) (holding testimony admissible that complainant’s statement had characteristics commonly found in descriptions of actual events).  Rather, Dr. Peek’s proffered testimony expressed a direct opinion on whether C.D. had in fact memorized his testimony and was reciting a story that he had learned in previous interviews.  
See Schutz
, 957 S.W.2d at 
73 (holding expert’s testimony was direct comment on truthfulness of complainant’s allegations when he testified that the “less likely explanation” was that complainant had been the subject of manipulation).  
Therefore, we hold that although Dr. Peek explained that he was not giving an opinion on C.D.’s truthfulness, his testimony was nevertheless a direct comment on the truthfulness of C.D.’s allegations and, thus, properly excluded.  
We overrule Appellant’s first issue.

LISA DENTON’S TESTIMONY

In his second issue, Appellant argues that the trial court erred by excluding Lisa Denton’s testimony that C.D. had been previously sexually abused by his uncle.  T
o preserve a complaint for our review, however, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied, 
526 U.S. 1070 (1999).

In this court, 
Appellant contends that Lisa Denton’s testimony about C.D.’s prior abuse by his uncle was admissible because it was necessary to rebut medical evidence offered by the State, citing Texas Rule of Evidence 412(b)(2)(A), and because it is constitutionally required to be admitted, citing Texas Rule of Evidence 412(b)(2)(E).  However, Appellant raised neither argument before the trial court nor were his complaints apparent from the context in which they occurred.
(footnote: 3)  
See 
Tex. R. App. P.
 33.1(a)(1).  Therefore, we conclude that Appellant did not preserve his complaint for appellate review.  
See Eaves v. State
, 141 S.W.3d 686, 691 (Tex. App.—Texarkana 2004, pet. ref’d) (holding appellant’s constitutional issues under rule 412(b)(2)(E) were forfeited because appellant did not raise argument before the trial court).  We overrule Appellant’s second issue.

LESSER INCLUDED OFFENSE

In his third issue, Appellant contends that 
the trial court erred by refusing to submit his proposed jury instructions in the charge.  T
he indictment alleged in pertinent part that Appellant did “intentionally or knowingly cause the anus of said [C.D.], a child younger than 14 years of age who was not the spouse of said defendant, to contact the sexual organ of the defendant.”  
See 
Tex. Penal Code Ann.
 § 22.021(a) (Vernon Supp. 2005).  Appellant argues that the jury should have been given the option of finding him guilty of assault rather than aggravated sexual assault.
(footnote: 4) 

We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser included offense.  
Rousseau v. State
, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 919 (1993); 
Royster v. State
, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).  First, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record that would permit a jury to rationally find that if Appellant is guilty, he is guilty only of the lesser offense.  
Salinas v. State
, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005);  
Rousseau
, 855 S.W.2d at 672-73; 
Royster
, 622 S.W.2d at 446.
  
Although Appellant asserts that the first prong of the test is undisputed and, therefore, satisfied, the State contends that “under the circumstances of this case, assault is not a lesser-included offense of aggravated sexual assault.”   

Texas Code of Criminal Procedure article 37.09 provides that an offense is a lesser included offense if

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann.
 art. 37.09 (Vernon 1981).  Whether an offense is a lesser included offense of the charged offense is a determination that must be made on a case-by-case basis because a lesser included offense is defined both in terms of the offense charged and the facts of the case.  
Bartholomew v. State
, 871 S.W.2d 210, 212 (Tex. Crim. App. 1994); 
Day v. State
, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op. on reh'g).  
The controlling factor is whether the lesser included offense could be proven by the same facts necessary to establish the offense charged. 
Mello v. State
, 806 S.W.2d 875, 878 (Tex. App.—Eastland 1991, pet. ref’d).  In other words, the issue is whether proof of the charged offense actually included proof of the lesser included offense.  
See Bartholomew
, 871 S.W.2d at 212; 
Broussard v. State
, 642 S.W.2d 171, 173 (Tex. Crim. App. 1982).

A person commits the offense of assault if he intentionally, knowingly, or recklessly causes bodily injury to another.  
Tex. Penal Code Ann.
 § 22.01 (Vernon Supp. 2005).  
In the present case, aggravated sexual assault does not require proof of bodily injury.  
See id.
 § 22.021(a)
.  Under these indictments, the State was required to prove “contact.”  Evidence of contact does not constitute evidence of bodily injury.  Therefore, because this additional fact must be proved for assault, but not for the charged offense, assault is not a lesser included offense in this case under article 37.09(1).  
Tex. Code Crim. Proc. Ann.
 art. 37.09(1)
 (Vernon 1981)
; 
see Wilson v. State
, Nos. 12-02-00042-CR, 12-02-00043-CR, 2003 WL 21771766, at *7 (Tex. App.—Tyler July 31, 2003, no pet.) (mem. op.) (holding assault not a lesser included offense of aggravated sexual assault or sexual assault when, under the indictments, the State was only required to prove penetration, not bodily injury)
.  Even though there may be evidence in the record that Appellant inflicted bodily injury on C.D., that evidence is immaterial to our determination. 
See Jacob v. State
, 892 S.W.2d 905, 908 (Tex. Crim. App. 1995) (holding “facts required” language in article 37.09(1) means evidence legally required to prove elements as alleged in indictment, not evidence State presents to prove elements).

Neither can assault be a lesser included offense of the charged offense under any other provision of article 37.09 because (1) the offenses differ in ways other than simply in injury or risk of injury, (2) the requirement of a less culpable mental state is not the only difference between the offenses, and (3) assault is not merely an attempt to commit the charged offense.  
See 
Tex. Code Crim. Proc. Ann.
 art. 37.09(2)-(4).
  

For these reasons, we hold that the trial court did not err by refusing to submit the lesser included offense of assault in the jury charge.  We overrule Appellant’s third issue.

PATRICIA SEDGE’S TESTIMONY

In his fourth issue, Appellant argues that 
the trial court erred by admitting the testimony of sexual assault nurse examiner Patricia Sedge.
  
Specifically, Appellant contends that Ms. Sedge’s testimony was inadmissible because it was not shown to be reliable.
(footnote: 5)  We disagree.

As previously stated, we review a trial court’s decision to admit or exclude scientific expert testimony under an abuse of discretion standard.  
Sexton
, 93 S.W.3d at 99; 
Weatherred
, 15 S.W.3d at 542.  Thus, we must uphold the trial court’s ruling if it was within the zone of reasonable disagreement.  
Sexton
, 93 S.W.3d at 99; 
Weatherred
, 15 S.W.3d at 542.

Texas Rule of Evidence 702 provides that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.  
Tex. R. Evid. 
702.  The threshold determination in an inquiry into the admissibility of expert testimony under rule 702 is whether the testimony is helpful to the trier of fact.  
Emerson v. State
, 880 S.W.2d 759, 763 (Tex. Crim. App.), 
cert. denied
, 513 U.S. 931 (1994).
  For such testimony to be helpful, the basis of the testimony must be reliable.  
Id.
; 
Kelly v. State
, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992).
  In 
Kelly
, the court provided three criteria that must be satisfied for novel scientific evidence to be considered reliable:  (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question.  
Kelly
, 824 S.W.2d at 573.  Additionally, the court cited seven factors which could affect reliability:  (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question.  
Id.
  

The standard established in 
Kelly
 was expanded by the court through 
Hartman v. State
, in which the court held that the 
Kelly
 standard applies to all scientific evidence offered under rule 702.  946 S.W.2d 60, 63 (Tex. Crim. App. 1997); 
see also State v. Medrano
, 127 S.W.3d 781, 784 (Tex. Crim. App. 2004).
  
The court soon recognized, however, that the criteria used to prove reliability under 
Kelly
 became cumbersome under certain circumstances.  
Medrano
, 127 S.W.3d at 785; 
see also Nenno v. State
, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), 
overruled on other grounds by State v. Terrazas
, 4 S.W.3d 720 (Tex. Crim. App. 1999).  

In 
Nenno
, the court warned that although the general principles announced in 
Kelly
 apply to nonscientific expert testimony, the specific factors outlined in those cases may or may not apply depending on the context.  
Nenno
, 970 S.W.2d at 560.  Although 
Kelly
 remains the law after 
Nenno
, the court stated in 
Nenno
 that when addressing fields of study aside from the “hard” sciences, such as social sciences or fields that are based primarily upon experience and training as opposed to the scientific method, 
Kelly
’s requirement of reliability applies but with less rigor than it does to the hard sciences.  
Medrano
, 127 S.W.3d at 785 (citing 
Nenno
, 970 S.W.2d 
at 561).
  

Although the court in 
Nenno
 was not trying to develop a rigid distinction between “hard” sciences, “soft” sciences, or nonscientific testimony, the court nevertheless 
offered three inquiries more appropriately tailored to analyze soft sciences in which the validity of a theory or technique may be roughly accurate but somewhat misleading.  
Id. 
(citing 
Nenno
, 970 S.W.2d at 560-61).  When soft sciences are at issue, the trial court should inquire  (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert’s testimony is within the scope of that field, and (3) whether the expert’s testimony properly relies upon and/or utilizes the principles involved in the field. 
Nenno
, 970 S.W.2d at 561.   However, because the objective of both 
Kelly
 and 
Nenno
 was to ensure the reliability of expert testimony and scientific evidence, 
Nenno
 did not categorically rule out employing the 
Kelly
 factors in an appropriate case.  
Medrano
, 127 S.W.3d at 785 
(citing 
Nenno
, 970 S.W.2d at 561 n.9).

Here, Ms. Sedge’s testimony is more akin to a soft science because her testimony is based primarily upon experience and training as opposed to a scientific method.
  
See id.
 (citing 
Nenno
, 970 S.W.2d 
at 561); 
see also Yanez v. State
, No. 03-00-00576-CR, 2002 WL 90822, at *5 (Tex. App.—Austin Jan. 25, 2002, no pet.) (not designated for publication) (“While nursing is a scientific profession in some respects, Smith’s testimony in this cause was not based on scientific principles or theory, but on technical or specialized knowledge.”).  Therefore, we are guided by the 
Nenno 
factors set forth above.  
See Medrano
, 127 S.W.2d at 785 (citing 
Nenno
, 970 S.W.2d at 561).

Ms. Sedge testified that she has been a registered nurse for eight years.
 She is also certified by the Office of the Attorney General of Texas as a sexual assault nurse examiner for both children and adults.  To become a sexual assault nurse examiner, Ms. Sedge was trained by the Attorney General’s Office for 92 clinical hours and 64 classroom hours, half of which were dedicated exclusively to children.  During that time, she worked side by side with the sexual assault nurses at Cook Children’s Medical Center.  
Since she has become certified, she has conducted around 70 exams, about half of which were performed on pediatric patients.  She is a member of the International Association of Forensic Nurses, and she also participates in continuing training and peer reviews in the field of sexual assault nursing.  This testimony supports the conclusion that sexual assault nursing is a legitimate field of expertise.  
See Yanez
, 2002 WL 90822, at *5 (holding expert’s testimony supported the conclusion that emergency and sexual assault nursing are legitimate fields of expertise when expert testified that she was a certified emergency care nurse, she completed her training for certification as a sexual assault nurse, and she had conducted over four hundred sexual assault exams during the five years preceding trial).  There is no real question here that Ms. Sedge’s testimony was within the scope of that field.  And Ms. Sedge testified that during her examination, she utilized all the principles she had learned from her training as a sexual assault nurse examiner and had not deviated from any of the standards accepted in the field.  Furthermore, she stated that her conclusions were based on her training and experience.  Thus, Ms. Sedge’s testimony relied upon and utilized the principles involved in sexual assault nursing.

For these reasons, we hold that the trial court did not abuse its discretion by admitting the testimony of sexual assault nurse examiner Patricia Sedge.  
We overrule Appellant’s fourth issue.

OUTCRY TESTIMONY

In his fifth issue, Appellant contends that the trial court erred by admitting  outcry testimony in violation of article 38.072 of the Texas Code of Criminal Procedure.  Specifically, Appellant argues that the trial court erred by admitting the outcry testimony of witnesses Laura Rangale and Dena Hill without first conducting a proper reliability hearing as to the statements.  

To allow admission of a child’s outcry statement under article 38.072, the trial court must conduct a hearing outside the presence of the jury and find the statement reliable based on its time, content, and circumstances.  
Tex. Code Crim. Proc. Ann.
 art. 38.072, § 2(b)(2) (Vernon 2005).  
The phrase “time, content, and circumstances” refers to “the time the child’s statement was made to the outcry witness, the content of the child’s statement, and the circumstances surrounding the making of that statement.” 
Broderick v. State
, 89 S.W.3d 696, 699 (Tex. App.—Houston [1st
 Dist.] 2002, pet. ref’d) (quoting 
MacGilfrey v. State
, 52 S.W.3d 918, 921 (Tex. App.—Beaumont 2001, no pet.)). 

During trial, but outside the presence of the jury, the State suggested to the court that before the outcry statements could be admitted, “the Court has to have a hearing outside the presence of the jury to determine that the statements are admissible.”  The State then proposed that it would tell the court what the witnesses were going to say and if the court wanted it to put on the witnesses, that would be fine.  The State then summarized the testimony that each witness would provide, including how C.D. knew each witness, when he spoke to each witness about the assault, and what
 C.D. told each of them about the assault.
(footnote: 6)  After the summary, the prosecutor stated, “I believe these statements are clearly reliable.  They’re close in terms of times and place when the child made the outcry.”  Furthermore, the State expressed to the court that if it wanted the State to call a witness, then the State was prepared to do so.  Appellant made a hearsay objection both after the State summarized the outcry testimony outside the presence of the jury and, when the jury was present, before each witness testified as to what C.D. told them. The trial court overruled Appellant’s objections and granted the State’s motion to admit the outcry testimony. 

Appellant contends that there was no “hearing” as required by the statute but, at most, only a bench conference.  We disagree.  We conclude that even though no witnesses were called to testify
, there was an adequate hearing outside the presence of the jury in which the trial court found that the statements were reliable based on their time, content, and circumstances.  
See 
Tex. Code Crim. Proc. Ann.
 art. 38.072, § 2(b)(2) (Vernon 2005); 
see also
 
Black’s Law Dictionary 
737 (8th
 ed. 2004) (defining a hearing as “a judicial session, usu[ally] open to the public, held for purposes of deciding issues of fact or of law, 
sometimes 
with witnesses testifying”) (emphasis added).
  
Moreover, assuming that Appellant’s hearsay objection also preserved a complaint about the adequacy of the hearing under article 38.072, Appellant  cites no authority, and we have found none, requiring the State to call witnesses to testify at an article 38.072 hearing.  
Article 38.072 merely states that the trial court must conduct a “hearing” outside the presence of the jury and find the statement reliable based on its time, content, and circumstances.  
Tex. Code Crim. Proc. Ann.
 art. 38.072, § 2(b)(2). 
  
   
    

Furthermore, even if the trial court did abuse its discretion in admitting the outcry testimony, we conclude that 
any error was harmless.  Nonconstitutional error is not reversible if it does not affect an appellant’s substantial rights.  
Tex. R. App. P.
 44.2.  
A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.  
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall v. State,
 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref’d).  A conviction should not be overturned for such error if this court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.  
Duncan v. State
, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st
 
Dist.] 2002, pet. ref’d)
 
(citing 
Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).  Likewise, improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial.  
Leday v. State
, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); 
see Duncan
, 95 S.W.3d at 672 (holding improper admission of outcry testimony was harmless error because similar testimony was admitted through complainant, pediatrician, and medical records). 

In this case, several instances of similar testimony were developed and offered.  In addition to Ms. Rangale’s and Ms. Hill’s testimony, C.D. testified at trial, without objection, that 
his dad had given him a hickey by sucking on his neck and that 
Appellant had sexually abused him. 
 Further, Ms. Sedge noted that C.D. had a bruise on his neck, and C.D. told her that his dad had kissed him on the neck and had sex with him on two separate occasions.   

We conclude that, in the context of the entire case against Appellant, any error by the trial court in admitting the outcry testimony did not have a substantial or injurious effect on the jury’s verdict and did not affect Appellant’s substantial rights.  
See King
, 953 S.W.2d at 271.  
We overrule Appellant’s fifth issue.

CONCLUSION

Having overruled Appellant’s five issues, we affirm the trial court’s judgment. 

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  July 27, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Dr. Peek explained that as a child repeats the same story in response to multiple interviews, he begins repeating the same words rather than referring to the event itself.  Furthermore, Dr. Peek explained that children begin to reinforce the version of the story that is pleasing to the interviewer.  Because of this, Dr. Peek testified, the child’s testimony becomes so “packaged” that it needs other corroboration.  And in that case, Dr. Peek stated, whether the child has been previously abused would be of importance because (1) a child who had already been through a sexual abuse interview would be very sophisticated sexually and (2) a young child’s memory works in such a way that events often become combined.  Dr. Peek testified that from his review of CPS documents, C.D. had an extensive prior history of sexual abuse. 

3:
The State filed a motion in limine before trial requesting that the trial court order Appellant to refrain from mentioning before the jury evidence of C.D.’s sexual behavior with anyone other than Appellant.  The trial court granted the motion.  Subsequently, outside the presence of the jury, Appellant explained that he intended to call Lisa Denton to discuss C.D.’s sexual history, among other things.  The State responded that the testimony was inadmissible under Texas Rule of Evidence 412.  Rule 412 disallows, with some exceptions, evidence of specific instances of an alleged victim’s past sexual behavior.  
Tex. R. Evid.
 412.  The rule applies when a child victim has been the victim of a prior sexual assault.  
See, e.g.
, 
Matz v. State
, 989 S.W.2d 419, 422-23 (Tex. App.—Fort Worth 1999), 
rev’d on other grounds
, 14 S.W.3d 746 (Tex. Crim. App. 2000).
  
Appellant then argued that it was part of his defense that C.D. was recounting nothing more than what happened to him in 2002.  The trial court indicated that the testimony was inadmissible, and Appellant made an offer of proof.  Appellant did not offer any other grounds for admitting the excluded testimony when he made his offer of proof.  

4:
Appellant’s proposed charge states in pertinent part:  “Now, if you find from the evidence beyond a reasonable doubt that on or about 18
th
 day of April, 2004, in Denton County, Texas, [Appellant] did intentionally or knowingly cause bodily injury to [C.D.] by sucking on the neck, then you will find the defendant guilty.” 

5:
Within his fourth issue, Appellant also summarily states that Ms. Sedge was merely offered to improperly bolster C.D.’s testimony; however, he does not argue, cite legal authority, or make specific record references regarding any specific argument as to bolstering.  Thus, we overrule his bolstering contention as inadequately briefed. 
 Tex. R. App. P.
 38.1(h).

6:
As the State points out, the subsequent testimony of each witness corroborated the prosecutors’ summary of what the testimony would be.